UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CLARENCE R. BROWN, JR.,

        Petitioner,

v.

                                                    9:18-CV-0359 (LEK)

GERARD JONES,

        Respondent.

---

## DECISION AND ORDER

**I.    INTRODUCTION**

Petitioner Clarence R. Brown, Jr. filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Dkt. No. 1 ("Petition"), and attached records from his state court proceedings, Dkt. Nos. 1-1 through 1-9 ("State Court Records"). On April 11, 2018, the Court directed Petitioner to file an amended petition. Dkt. No. 6 at 2–4 ("April 2018 Order").[1]

On June 1, 2018, Petitioner filed an amended petition with the Court, which also included records from his state court proceedings. Dkt. No. 9 ("Amended Petition"); Dkt. No. 9-1 ("Exhibits"); Dkt. Nos 10 and 11 ("Additional Exhibits"). On June 21, 2018, the Court dismissed Petitioner's claims and gave him one final opportunity to file a viable amended petition. Dkt. No. 13 at 2–5 ("June 2018 Order").

On August 7, 2018, Petitioner filed his second amended petition. Dkt. No. 16 ("Second Amended Petition"); see also Dkt. Nos. 20 and 33 ("Submissions in Support"). On September 28, 2018, the Court directed Respondent to answer the petition. Dkt. No. 18 ("September 2018

---

[1] Citations to the parties' submissions, except the Bates Stamped pages within the State Court Record, refer to the pagination generated by CM/ECF, the Court's electronic filing system.

Order"). Respondent requested and was granted permission to limit his response to timeliness. Dkt. No. 24 ("Respondent's Letter Motion"); Dkt. No. 25 ("January 2019 Text Order"). Respondent then opposed the petition. Dkt. No. 27 ("Answer"); Dkt. No. 28 ("Respondent's Memorandum in Opposition"); Dkt. No. 29 ("Transcripts"); Dkt. No. 30, ("State Court Record" or "SCR"). Petitioner filed a reply. Dkt. No. 34 ("Traverse").

For the reasons that follow, the habeas petition is denied and dismissed.

## II. RELEVANT BACKGROUND

On September 22, 2008, Petitioner was convicted of two counts of second degree burglary and one count of fourth degree promoting prostitution "arising from his burglary of two homes and his having offered the services of prostitutes to the resident of one of those homes." People v. Brown, 902 N.Y.S. 2d 276, 276 (N.Y. App. Div. 2010).

On appeal, Petitioner argued that (1) the conviction was not supported by legally sufficient evidence and the verdict was against the weight of the evidence; (2) the trial court's Molineux and Ventimiglia rulings violated petitioner's due process rights; (3) the trial court erred in failing to give Petitioner a Huntley hearing; (4) prejudicial witness testimony tainted the jury; (5) Petitioner's counsel was ineffective; (6) the trial court erred when it failed to hold a hearing concerning Petitioner's felony enhancement, which violated petitioner's due process rights; (7) the trial court erred when it allowed certain exhibits into evidence; (8) the trial court's Sandoval ruling denied Petitioner his due process rights; (9) Petitioner's sentence is harsh and excessive; (10) the trial court erred when it failed to give the jury a Molinuex charge; (11) the trial court erred when failed to give a limiting instruction regarding the Molineaux testimony; (12) the trial court erred when it denied petitioner's motion to sever; (13) petitioner's right to a speedy trial

was violated; (14) the trial court erred when it failed to charge criminal trespassing as a lesser included offense; and (15) the guilty verdict should be dismissed because the State failed to formally move to amend the indictment. SCR at 1–52. The State opposed the motion. Id. at 472–539. On June 11, 2010, the Appellate Division of the N.Y. Supreme Court, Fourth Department unanimously modified Petitioner's sentence in the interests of justice, changing his sentence for second degree burglary to run concurrently as opposed to consecutively with his other conviction. Brown, 902 N.Y.S. 2d at 276. However, Petitioner's remaining arguments were dismissed as meritless and the conviction was otherwise affirmed. Id.

Petitioner filed both a counseled and pro se application for leave to appeal with the New York State Court of Appeals. SCR 542–45 (counseled appeal); Id. at 547–559 (pro se appeal). On August 5, 2010, the Court of Appeals denied leave. People v. Brown, 15 N.Y.3d 802 (2010).

Following the direct appeal, Petitioner had several written exchanges with the Fourth Department. On July 20, 2010, the Fourth Department returned papers to the Petitioner for failing to include a return date, a notice of motion, proof of service on the District Attorney, copies of any prior orders, and an original and copy of each document. SCR 951. Petitioner was provided a courtesy copy of the Fourth Department's rules to inform him of the format of any subsequent motions he may wish to make. Id.

Petitioner then sent the court an undated letter. SCR at 561–63. The Fourth Department responded on October 8, 2010, acknowledging receipt of the undated correspondence and advising petitioner that he "currently has nothing before the Fourth Department." Id. at 598. Further, the Fourth Department explained that

> if [petitioner] believe[s] that this [c]ourt misapprehended or failed to

3

> consider specific issues on [his] appeal, [he] may make a formal motion for reargument. If [he] believe[s] that [he] w[as] denied effective representation by appellate counsel, [he] may make a motion for a writ of error coram nobis to vacate the order of this [c]ourt and grant an appeal *de novo*. This office does not have any forms for these types of motions. In [the court's] two previous letters, however, [it] explained the rules for making these types of motions and included a copy of the Rules of the Appellate Division Fourth Department.

Id. The Fourth Department sent Petitioner two additional letters, one in June of 2011 and another in July of 2011, returning papers to Petitioner without consideration due to Petitioner's failure to file the appropriate paperwork. Id. at 952–53.

On September 23, 2011, Petitioner sent a letter to Cayuga County Court alleging false imprisonment, malicious prosecution, and ineffective assistance of counsel. SCR at 599–625. On October 19, 2011, the Cayuga County Court responded. Id. at 629. It construed petitioner's letter as a motion to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 ("440 motion"). Id. But because the "motion was not made on reasonable notice to the People" and failed to set forth "sworn allegations of facts to support th[e] claims," the motion was "rejected as procedurally deficient." Id.

Petitioner went on to file four subsequent 440 motions. SCR at 631–642 (filed on December 12, 2011); Id. at 656–57 (filed on March 24, 2014); Id. at 915–923, 924–25, 933 (two motions filed on October 10 and November 21, 2015 which were subsequently returned to Petitioner as improperly filed). All of the motions were dismissed as meritless or as previously denied during the course of petitioner's direct appeal. Id. at 645–48 ("Decision and Order dated February 23, 2012"); Id. at 665–69 ("Decision and Order dated May 5, 2015"); Id. at 946–950 ("Decision and Order dated January 12, 2016").

On February 20, 2015, the Fourth Department again "returned [Petitioner's papers] without consideration because [they] fail[ed] to comply with th[e c]ourt's rules." SCR at 958. Petitioner neglected to include the notice of motion, supporting affidavit, or proof of service. Id. Furthermore, it was unclear what relief petitioner sought; however, the court did engage in a lengthy discussion about how to properly appeal the denial of a 440 motion. Id. at 958–59. On March 29, 2016, the Fourth Department refused to accept Petitioner's motion to appeal the Cayuga County Court's decision denying his January 12, 2016 440 motion. Id. at 960. The letter outlined that Petitioner again failed to include a proof of service, copy of the 440 motion, copy of the order to be appealed, copy of the DA's opposition, copy of Petitioner's reply, and an original and copy of all papers which Petitioner possessed. Id. Petitioner attempted to file three more appeals, none of which were accepted for filing because they were not compliant with the Fourth Department's rules. Id. at 961–62 ("May 17, 2016 Letter from Fourth Department refusing submission"); Id. at 963 ("Letter from Fourth Department refusing submission dated October 31, 2016"); Id. at 964 ("Letter from Fourth Department refusing submission dated January 10, 2017").

In Fall 2013, Petitioner also began attempting to file writs for error coram nobis. SCR at 954. On October 16, 2013, the Fourth Department returned petitioner's papers "without consideration because they [we]re procedurally non-compliant with th[e c]ourt's rules." Id. This letter also outlined the requirements for filing a formal motion. Id. The Fourth Department sent two additional, almost identical letters to petitioner—returning his submissions for substantially similar reasons—on October 24 and 29, 2013. Id. at 956–57. Petitioner unsuccessfully attempted to file two additional writs in 2017. Id. at 965 ("August 1, 2017 Letter from Fourth Department

returning submission without consideration"); Id. at 966 ("August 22, 2017 Letter from Fourth Department returning submission without consideration"). Petitioner ultimately filed a successful petition on August 24, 2017. Id. at 967–1261. The People opposed the motion, and, on December 22, 2017, the Fourth Department denied it. Id. at 1263–1271 ("People's Opposition"); Id. at 1272 ("Fourth Department Decision").

## III. THE PETITION

Liberally construing the Second Amended Petition, Petitioner appears to raise the following grounds for relief: (1) his trial counsel provided ineffective assistance by "not moving to suppress certain evidence,. .. failing to con[duct] an adequate investigation [about the weather and timeline of the criminal activity and Petitioner's medical conditions] before trial. .. .," and failing to call requested witnesses to testify, Second Am. Pet. at 12–13, 25–26, 45, 47; (2) legally insufficient evidence led to his conviction because (a) the victim could not positively identify Petitioner, (b) the photographs from the alleged crime scene were inaccurate, and (c) the detectives "knowingly and deliberately misleads [sic] both. .. jur[ies]. .. by suppl[ying] false information that le[d] to [Petitioner's] false arrest," leading to his prison term, of which he has served twelve years, Id. at 13, 18–19, 32, 47; (3) his appellate counsel was ineffective, Id. at 45; and (4) the prosecutor knowingly produced false evidence and failed to share exculpatory evidence with Petitioner and his counsel about the location of the crimes, Id. at 54, 57, 68.

Respondent opposes the petition, arguing that it should be dismissed as untimely. Resp.'s Mem. in Opp'n.

## IV. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted on April

24, 1996, established a one-year statute of limitations for prisoners to seek federal review of their state court criminal convictions. 28 U.S.C. § 2244(d)(1). The one-year period generally begins to run from the date on which the state criminal conviction became final, either by the conclusion of direct review or by the expiration of the time to seek direct review. 28 U.S.C. § 2244(d)(1)(A); Gonzalez v. Thaler, 565 U.S. 134, 149–50, n.9 (2012).[2] For purposes of § 2244, a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case. Gonzalez, 565 U.S. at 150; Saunders v. Senkowski, 587 F.3d 543, 547–49 (2d Cir. 2009).

In this case, Petitioner's conviction was affirmed by the New York Court of Appeals on August 5, 2010. Brown, 15 N.Y.3d at 802. Petitioner's conviction became "final" for purposes of the AEDPA ninety days later, on November 3, 2010, when the time to seek certiorari expired. Thaler, 565 U.S. at 149. Petitioner had one year from that date, or until November 3, 2011, to file a timely federal habeas petition. The initial petition, signed on March 18, 2018, is approximately six years and four months late.[3]

**A. Statutory Tolling**

---

[2] The limitations period may also start running from the date on which: an unconstitutional, state-created impediment to filing a habeas petition is removed; the constitutional right on which the petitioner bases his habeas application was initially recognized by the Supreme Court, if the right was newly recognized and made retroactively applicable; or the factual predicate for the claim or claims presented could have been discovered through the exercise of due diligence (newly discovered evidence). 28 U.S.C. § 2244(d)(1)(B)–(D). None of these appear to apply in this case.

[3] Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing. Houston v. Lack, 487 U.S. 266, 270 (1988).

7

The one-year limitation period under AEDPA is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." § 2244(d)(2); Saunders, 587 F.3d at 548. The tolling provision "excludes time during which properly filed state relief applications are pending, but does not reset the date from which the one-year statute of limitations begins to run." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). The tolling provision excludes from the limitations period only the time that the state relief application remained undecided, including the time during which an appeal from the denial of the motion was pending. Saunders, 587 F.3d at 548; Smith, 208 F.2d at 16.

It appears that Petitioner asserts, pursuant to § 2244(d)(2), that the statute stopped the one-year clock while Petitioner's 440 motions and writs of coram nobis were being litigated. Traverse at 2. However, statutory tolling requires "a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment." § 2244(d)(2) (emphasis added); Saunders, 587 F.3d at 548. "[A]n application is properly filed when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These [rules] usually prescribe, for example, the form of the document." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (internal quotation marks and citations omitted).

As demonstrated by the return correspondence, none of the submissions from July 2010 through July of 2011 were properly filed. Each letter to Petitioner from the Fourth Department enumerated the numerous deficiencies from which Petitioner's letters suffered: namely his failure to present a motion to the court, with the appropriate supporting documentation, in the format specified by the Appellate Division's guidelines. Accordingly, none of Petitioner's submissions to the state courts trigger statutory tolling. Artuz, 531 U.S. at 8; see also Morales v. Bradt, No. 11-

8

CV-329, 2013 WL 600176, at *3 (W.D.N.Y. Feb. 11, 2013) (refusing to apply statutory tolling where Appellate Division rejected petitioner's coram nobis "due to various filing deficiencies," including lack of a return date and failure to file an original and copy of the motion papers); Austin v. Brown, No. 07-CV-960, 2008 WL 4790783, at *1, n.1, *3 (E.D.N.Y. Oct. 29, 2008) (denying statutory tolling to petitioner because state coram nobis filing, which failed to include a proof of service, make the motion returnable, or include a return date, was not properly filed).

Further, contrary to Petitioner's assertions, the letter which Petitioner sent to the Cayuga County Court on September 23, 2011—which the state court liberally construed as a 440 motion—does not warrant statutory tolling. The state court's response stated that the motion was "rejected as procedurally deficient" because Petitioner failed to make the motion "on reasonable notice to the People[.]" SCR at 629. "Failure to provide reasonable notice, or any return date, on a post-conviction application renders that application not 'properly filed' for purposes of 28 U.S.C. § 2244(d)(2)." Merritt v. Chappius, No. 14-CV-1481, 2015 WL 5711961, at *8 (N.D.N.Y. Sept. 29, 2015) (citing cases). Therefore, Petitioner's 440 motion was also improperly filed.

Petitioner's remaining 440 motions, the first of which was signed on December 12, 2011, and final writ of error coram nobis, signed on August 24, 2017, were properly filed. However, they had no effect on the statute of limitations calculation because they could not serve to "revive [an] expired statute of limitations." Gillard v. Sticht, No. 16-CV-513, 2017 WL 318848, at *3 (N.D.N.Y. Jan. 23, 2017) (citations omitted); accord, Roberts v. Artus, No. 16-CV-2055, 2016 WL 2727112, at *2 (E.D.N.Y. May 5, 2016) ("If the 440 motion was filed after the one-year statute of limitations period expired, it cannot be counted for purposes of statutory tolling.").

Therefore, unless another type of tolling applies, petitioner's petition was filed over six

years late.

**B. Equitable Tolling**

AEDPA's one-year statute of limitations period is also "subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 645 (2010). To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. at 649 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). Courts have also recognized an equitable exception to the one-year statute of limitations under § 2244(d)(1) in cases where a petitioner can prove actual innocence. McQuiggin v. Perkins, 569 U.S. 383, 393 (2013). However, a petitioner's lack of legal knowledge does not constitute extraordinary circumstances preventing him or her from filing a timely petition. Jenkins v. Greene, 630 F.3d 298, 305 (2d Cir. 2010); see Smith, 208 F.3d at 18 (noting that a petitioner's pro se status does not establish sufficient ground for equitable tolling).

Petitioner has not identified any extraordinary circumstance causally related to his failure to comply with the one-year statute of limitations period. Petitioner's lack of formal education or legal training, Traverse at 9, do not constitute extraordinary circumstance. Jenkins, 630 F.3d at 305; Smith, 208 F.3d at 18. Accordingly, Petitioner has failed to establish that equitable tolling is appropriate and the Court can discern no other reason, on this record, to apply it.

**C. Equitable Exception**

The Supreme Court recently held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to avoid the "expiration of the statute of limitations." McQuiggin, 569 U.S. at 386. The Supreme Court cautioned, however, that "tenable

actual-innocence gateway pleas are rare," and that a "petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995) and citing House v. Bell, 547 U.S. 518, 538 (2006) (emphasizing that the Schlup standard is "demanding" and seldom met)).

Here, Petitioner has proffered (1) two brief, conclusory assertions of actual innocence, Second Am. Pet. at 54, 70, and (2) arguments about the legal insufficiency of his conviction and evidentiary errors committed by the trial court, Traverse at 12–17.[4] Petitioner offers no new evidence of his innocence. Instead, he seeks to rehash what was already decided by again calling into question the strength of the evidence previously considered by the jury. Accordingly, he has failed to plead, let alone demonstrate, actual innocence as that term is defined by the Supreme Court, and he is not entitled to use actual innocence as a gateway to federal habeas review of his untimely petition. McQuiggin, 569 U.S. at 386.

Therefore, Petitioner's habeas petition is dismissed as untimely.

## V. CONCLUSION

Accordingly, it is

**ORDERED**, that the second amended petition, Dkt. No. 16, is **DISMISSED** as untimely; and it is further

**ORDERED**, that no Certificate of Appealability ("COA") shall issue because petitioner

---

[4] The Second Amended Petition argued that telephone records showed that someone used a cell phone to call Petitioner the night of the crime and that there was no trailer park located where the victim claims he lived and was burglarized. Second Am. Pet. at 54, 70. Further, in his Traverse, Petitioner appears to reproduce portions of previous testimony and assert that false witness testimony resulted in his present conviction. Traverse at 12–17.

failed to make a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2);[5] and it is further

**ORDERED**, that the Clerk serve copies of this Decision and Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

DATED: June 21, 2019
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[5] Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); see also Richardson v. Greene, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).